DREW (Ret.), Associate Judge.
The final decree of divorcing William W. Gammon and Johnnie Gammon in ,1965 provided that, inter alia, Lot 6 of Newton Subdivision as per map thereof in Map Book 19 at page 77 of the Volusia County Public Records (hereafter referred to as the riverfront property) was owned by the parties as tenants by the entirety. In 1971 this property was partitioned and in such judgment titled was vested in William W. Gammon provided he pay certain fees and satisfied certain described judgments.[1] The decree contained a provision that if the fees and judgments were not paid within the specified time the property was *33 to be sold at public sale and the proceeds paid into the court registry subject to its further orders.[2]
William Gammon did not pay the amounts required by the partition judgment, whereupon the property was sold at public sale October 1, 1971, to Hubert Smith and certificate of title was delivered to him. March 1, 1972, Smith and wife conveyed said lands to Roderick B. Gammon, the son of Ezell Gammon and William Gammon.[3]
This litigation was instituted to set aside the public sale because, so it is alleged, Ezell Gammon, the divorced wife of William, prevented the consummation of a loan to enable William to pay off the encumbrances required of' him by the judgment in the partition action by filing a claim of dower in the public records as William’s common law wife. Further, it is alleged she prevented him from attending the public sale and bidding on said property by refusing, at the closing set to pay her off and get a release, to sign the necessary papers.[4] William charges in his complaint that Ezell and their son, Roderick, “by means of trickery, fraud, deceit and deception” prevented him from satisfying the partition judgment and obtaining title to said property. He further charges that the purchase by Smith at the public sale “is the culmination of the fraud and deception perpetrated upon him”. Issues were made by appropriate answers and a counterclaim filed by Roderick Gammon for possession of the property and damages (rent) for its unlawful detention.[5]
The final judgment, questioned here by both plaintiff and defendants below, held that the public sale was properly conducted, and that the purchase price of $50.00 at said sale “was not inadequate” in consideration of the liens and encumbrances on said property. The Court also held:
“4. None of the Defendants named in this cause of action and none of the other persons set forth in Plaintiff’s complaint were involved in any trickery, fraud, deceit, deception or conspiracy as alleged in Plaintiff’s Complaint, but Plaintiff, William W. Gammon, has some equitable interest in said property under a Quantum Meruit theory and the Court, under its equitable jurisdiction, has determined to grant such other and further relief as it deems proper as requested in paragraph (g) of Plaintiff’s demand for relief on page 4 of the Complaint, and therefore finds that William W. Gammon is entitled to recover f,rom Roderick B. Gammon the sum of $1,700.-00 within 31 days from date hereof.
“5. Roderick B. Gammon, a/k/a R. B. Gammon, is the legal owner of said real property and he is entitled to possession of same within 31 days from date of this Final Judgment.
“6. The statement of Roderick B. Gammon’s chain of title as set forth in paragraph 2(a)-(e) above is approved by the Court, and Roderick B. Gammon is entitled to rental payments from October 1, 1971, to date, because William W. Gammon has resided on the premises during said period of time. But because the Court has, under its Quantum Meruit theory, included as a credit to Roderick B. Gammon an amount due him for rent on the property, said amount having *34 been considered in reaching the sum of $1,700.00 set for in paragraph 4 above, Defendant/Courterclaimant, Roderick B. Gammon, is not entitled to a money judgment for the rental value of the property while occupied by Plaintiff.”
Appellant (plaintiff below) questions that portion of the judgment quoted above finding the defendants free of any fraudulent conduct and awarding possession of said property to Roderick Gammon. There is competent substantial evidence in the record to support this entirely factual question requiring us, under elemental principles, to accept them. This portion of the judgment is, therefore, affirmed.
The award of $1,700.00 to William Gammon and the holding that Roderick Gammon was not entitled to recover rent for the period of his ownership is clearly erroneous. We find nothing in the record to support an award of $1,700.00. The paragraph of the prayer of the complaint referred to in the judgment is the usual prayer for “further relief as it [the Court] may deem proper.” This affords no basis for the entry of a judgment wholly beyond the scope of the pleadings and proof. That part of the judgment is reversed.[6]
Appellee, Roderick Gammon, questions that portion of the judgment holding him to be primarily responsible for the payment of the “mortgages, judgments and liens” against the property. The judgment approved the nominal amount paid for the property at the public sale partly, if not primarily, because of such liens and judgments. In view of that we find nothing wrong with this part of the judgment.
Affirmed in part, reversed in part and remanded to the trial judge for the entry of a judgment in accordance with the views hereiii expressed.
It is so ordered.
McCORD, J., concurs.
BOYER, Acting C. J., concurs in part and dissents in part.

. The power of the trial court to require the payment of certain judgments (as distinguished from costs and attorneys fees [Section 64.081, Florida Statutes]) is not presented here.

.This property and another parcel awarded to the former wife in the partition suit were apparently the only properties owned by them as tenants by the entirety. We gather from the record that the property awarded to William Gammon, the riverfront property, was occupied by him after the original divorce as his home and is still so occupied.

. The marriage of William and Ezell Gammon was dissolved prior to the marriage of William Gammon to Johnnie Gammon.

. The public sale was conducted in DeLand, the county seat, some 30 miles away from the place arranged to close the loan on the same date and time.

. The parties stipulated that $200.00 per month was a reasonable rent for said premises.

. The trial judge’s obvious purpose was to reach a conclusion doing justice to both sides. Justice under law is regulated by the law. The late Justice Ellis writing for the court in Sikes v. Dade Lumber Co., 98 Ela. 451, 123 So. 918 (in a case the author of this opinion unsuccessfully prosecuted) said: “. . . [Scientific administration of justice can never be accomplished in disregard of rules of procedure which have for their purpose a clear and definite presentation of an issue of law and fact. ‘Justice,’ as the term is understood and applied in the courts ... is governed by rules of conduct and legal procedures in which those who seek it must conform to the end that the elements of which it consists in the particular case may be clearly stated, and not left to brilliant generalities which at any material point in the controversy may be as elusive as the iridescence of an autumn sunset.”