318 So.2d 442 (1975)
Jose Lopez RODRIGUEZ, Appellant,
v.
DICOA CORPORATION, a Florida Corporation, Appellee.
No. 74-1471.
District Court of Appeal of Florida, Third District.
July 22, 1975.
Rehearing Denied August 29, 1975.
*443 Taylor, Brion, Buker, Hames & Greene, Miami, and Arnaldo Velez, Hialeah, for appellant.
Noriega & Bartel and Paul Levine, Miami, for appellee.
Before BARKDULL, C.J., PEARSON, J., and DREW, E. HARRIS (Ret.), Associate Judge.
DREW, E. HARRIS (Ret.) Associate Judge.
Dicoa Corporation sued Jose Rodriguez on a promissory note. Writ of Attachment was issued and served, along with the Complaint, on the wife of the defendant, who, at that time paid the sheriff the full amount due. Such payment was endorsed on the Writ and filed in the cause. Three weeks later Dicoa Corporation filed in the same cause an "Amendment to Complaint" seeking recovery on numerous additional promissory notes alleged to be either signed by or unconditionally endorsed by defendant Rodriguez. The Amendment contains no allegation connecting the causes of action therein sued on with the original cause of action alleged in the original Complaint and on which the original Attachment issued. The only connection appearing in the pleadings is that the notes were demand notes in varying amounts payable by a corporation of which Rodriguez was President and endorsed by him personally and payable to Dicoa Corporation.[1] Simultaneously with the filing of the "Amendment to Complaint" the plaintiff filed what is described in this common law action as a "Motion for Leave to Make Equitable Attachment". In this Motion plaintiff alleged, in substance, that Rodriguez had perpetrated a fraud on it by paying off the original amount sued for and thereby preventing the sheriff from attaching and taking in his custody  and  for defendant's protection  storing in a bonded warehouse, numerous valuable paintings, statues and other works of art. Plaintiff then alleges:
"Plaintiff has a number of other claims against this Defendant, reflected in its Amendment to Complaint for Damages of even date. All of these claims are based upon written proof in the form of signed promissory notes. Defendant is either the unconditional guarantor thereof (as he is in respect to the Count I note upon which payment has been made by the Defendant's wife), or the maker thereof. In all instances, however, Plaintiff's proof is virtually unrefutable.

*444 "Now that the Defendant and his wife are aware of this litigation and the Plaintiff's prior efforts to attach Defendant's property to assure that Plaintiff will be able to recover upon its judgment herein, it may well be that the paintings, etc. have, since June 28, 1974, been already removed from the jurisdiction of this Court.
"If they have been so removed in the face of the sworn allegations in Plaintiff's Motion for Attachment, such conduct amounts to fraud in respect to Plaintiff's other claims, well known to be outstanding by the Defendant and his wife. As such, Defendant and his wife should be ordered to return this property to this jurisdiction so that it will remain available to answer to Plaintiff's requested judgments on the remaining Counts of this action.
"If Defendant and his wife have not, in fact, since being notified of this action, attempted to remove the Defendant's property out of State, Plaintiff requires interim relief during the pendency of Counts II through V, so as to assure that, prior to judgment on these additional Counts, the Defendant's property above described is not fraudulently removed from this State.
"Plaintiff has previously posted an attachment bond, payable to the Defendant herein, in the sum of $11,700.00. That bond can and should be converted into an injunction bond to protect the Defendant not only in respect to the prior attachment effort, but in respect to the injunctive relief herein prayed. If necessary, Plaintiff would be willing to add to that bond an additional $3,300.00 in coverage so as to assure the Defendant of $15,000.00 in interim protection in the event that Plaintiff's claims are not proven in this action.
"Plaintiff, however, does require the assistance of an equitable attachment to require the retaining of the property hereinabove described, within this jurisdiction, pendente lite; to prohibit it from being sold, transferred, encumbered or otherwise dealt with during the pendency of this action; otherwise, Plaintiff, when it recovers its anticipated final judgment herein, will have been defrauded in respect to its ability to recover against the property of this Defendant which was located in this State when this action commenced.
"Undersigned counsel further represents to the Court in respect to the above application, that he has personally inspected evidence furnished him by the within Plaintiff establishing that dollar for dollar consideration was given for the issuance and delivery of each of the notes sued upon in both the Complaint and the Amendment thereto. There would thus seem to be absolutely no legitimate defense to this action either in respect to the original Count or the additional Counts.
"Defendant's unwillingness to allow attachment of his goods, even in a Bonded Warehouse, has already been demonstrated in the clever tactic of prepayment that was utilized herein.
"This prepayment, at the same time constitutes sufficient demonstration from the Defendant and his wife that he well knows that he is indeed obligated to the Plaintiff in this action.
"Common sense dictates that one does not pay out some $6,000.00 in cash in response to an unlitigated claim unless one knows that the claim is well-founded; also that he has more to gain by not permitting the attachment.
"Defendant's very own conduct, accordingly, suggests sound reason for equitable attachment."
On this bizarre sworn motion the trial court, without requiring security of any kind, and, as is stated in the order "in the interests of justice and in order to preserve *445 the status quo as it existed on the date of this action in respect to the property of the defendant herein within the jurisdiction of this Court, it is in order to grant plaintiff's motion ...". The court then ordered that if the defendant or his wife had removed or caused to be removed "his paintings, sculptures and other works of art" that were in his apartment when the original levy was made that they or their agents, servants, etc., immediately return all of said personal property to said premises "and completely restore said apartment" to its condition as it existed on "the date of said attachment". He also ordered the defendant to file a complete inventory of such articles "including not only a description of each item but defendant's best and fairest statement of market value". Then, the trial judge said:
"If the total value, placed upon these items, exceeds the sum of $5,850.00, the Court, upon motion filed and served and due notice to counsel for Plaintiff, will entertain a motion to increase bond which has heretofore been posted by the within Plaintiff in this action."
The order also contained the following injunctive language:
"Defendant, JOSE LOPEZ RODRIGUEZ, his wife, HILDA LOPEZ, and their agents, servants and employees, be and they are each hereby enjoined and restrained, temporarily, until further Order of this Court, from selling, transferring, encumbering, disposing of or removing from the apartment at 3929 Garden Avenue, Miami Beach, Florida, any of the paintings, sculptures and other works of art that were located therein on June 28, 1974 when the Sheriff of Dade County attempted to levy a Writ of Attachment thereon. If the property is presently intact and in the apartment, the prohibition against removal from the apartment will apply immediately. If the property has been removed from the property between June 28, 1974 and date, the prohibition against removal shall apply once the property has been returned to the apartment as above ordered. The prohibitions against sale, transfer, encumbrance or other disposition, shall apply in any event, irrespective of where the property may now be located. The Court notes that it has personal jurisdiction over the Defendant herein, who has appeared in this action through counsel."
Also included in this order  without, so far as the record shows  any notice to the bondsman on the original Attachment Bond, was the following:
"The Attachment Bond heretofore posted by the Plaintiff, as principal, and Fidelity and Deposit Company of Maryland, as surety, shall continue in full force and effect, until discharged by Order of this Court, to include this supplemental injunctive order as well as the initial attachment effort. That is to say, it shall remain in full force and virtue not only in accordance with the initial conditions set out therein, but shall also stand as security to pay all costs and damages the Defendant may sustain in consequence of complainant improperly suing out the within supplemental order."
When the defendant refused  or failed  to comply with the above order, the court granted plaintiff's motion for contempt order, held the defendant in contempt[2] and entered a default against defendant under the authority of Rule 1.380(b)(2)(C)[3], and provided "at plaintiff's option this cause may proceed ex parte". Following the entry of this default judgment *446 and contempt order the court entered a final judgment for over $300,000.00. It is from this judgment that this appeal is taken.
We have delineated and quoted extensively from the record here because such disclosures contain the answer to this appeal.
No authority is required to support the statement that while our rules of procedure have been changed to substantially eliminate all distinctions between common law and equitable actions, the basic distinction between equity and law actions has been preserved.[4] This was a typical action at law. The first complaint, the attachment and levy and the payment on the note sued on is clear proof of the adequacy of the common law remedy. "Equitable attachments" are, in some instances recognized in purely equitable actions, but such is not the case here. The order of the trial judge finds no support in the law or precedent. It was a gross abuse of judicial power under the disclosures of this record. The trial court substituted his concepts of "equity and justice"[5], for the clear provisions of the Statutes of this State relating to attachments. He ignored the provisions of the law relating thereto which are designed to provide protection both to the creditor and debtor. When the order in question was entered some three weeks after the defendant had discharged the debt sued on by payment[6] the trial court was without a vestige of authority to order the return of any personal property moved from the premises. The defendant on discharge of the Writ was as privileged to move his possessions as he ever was. The other requirements of the order were equally as void of authority.
The default judgment and the final judgment flowing from and being founded on the void order bearing the title "Order on Pending Motions" heretofore discussed, are likewise void, of no effect, and we so hold.
Judges will nothing. They are instruments of the law. This concept is the essential essence of the sacred principle that ours is a government of laws and not of men. The great traditions of the judiciary in this nation have been founded on adherence to this principle and its component part, judicial self restraint. How much of our present difficulties and dilemmas is the result of either forgetting these truths or ignoring them nobody knows; but, it is inevitable that history will record the score.
The disclosures of this record should never have occurred. We hold that, assuming, but not deciding, because the question is not presented, that the trial court had any jurisdiction after the payment and discharge of the debt originally sued on, that the judgment herein appealed and the orders on which it is based are reversed and this cause remanded for further proceedings consistent with this decision and the applicable statutes and rules of Florida.
It is so ordered.
NOTES
[1] Apparently no attack was made on the propriety of this so-called amendment either from the standpoint of having no relation to the original cause of action or being filed after the original action had been terminated by payment.
[2] The order reserved to a later date the matter of imposing sanctions.
[3] This is a part of the discovery rule. We find no resemblance to the disclosures of this record and the rules relating to Discovery. Assuredly this rule is no authority for what was done.
[4] 1 Florida Jurisprudence  Actions  ¶ 9, page 133, 134; also see Historical Notes to 1967 Rules, F.S.A., Volumes 30, 31, 32, 33 (1973 Revision) page 55 et seq.
[5] Gammon v. Gammon, Fla.App., 301 So.2d 31 (1974).
[6] Such payment fully discharged the defendant from all obligations under the Writ of Attachment.